**Commonwealth** of the Northern Mariana Islands, **ex rel.** Robert B. **Dunlap** II, Attorney General (Acting); and Secretary of Finance of the Commonwealth of the Northern Mariana Islands, as Successor to the CNMI Lottery Commission, Plaintiffs/Appellants,

**v.**

**Island Amusement Corporation,** Octavio Marasigan, Individual Does 2-20, and Roe Corporations 1-20, Defendants/Appellees.

Appeal No. 97-024
Civil Action No. 96-1095
November 16, 1998

Argued and Submitted October 30, 1998

Counsel for appellants: Michael Ambrose, Assistant Attorney General, Saipan.

Counsel for appellees: Eric S. Smith, Saipan.

BEFORE: TAYLOR, Chief Justice, DEMAPAN, Associate Justice, and MANGLONA, Justice Pro Tem.

TAYLOR, Chief Justice:

¶1 ▪ Appellants ("the government") appeal from an order denying their motion for a permanent injunction. We have jurisdiction pursuant to 1 CMC §3102 and article IV, § 3 of the Commonwealth Constitution. N.M.I. Const. art. IV §3 (1997). We affirm.

### ISSUE PRESENTED AND STANDARD OF REVIEW

¶2 ▪ We are asked to determine whether the Superior Court erred in finding that the definition of the game "bingo" as established in the Rules and Regulations of the Commonwealth Lottery Commission and the Saipan Municipal Ordinance includes Island Amusement Corporation's ("IAC") bingo game played under the license issued by the Mayor of Saipan. This issue involves a question of law and is reviewed de novo. *Commonwealth v. Kaipat*, 2 N.M.I. 322, 327-28 (1991).

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 On September 31, 1996, the government filed a three-count complaint seeking injunctive and monetary relief for the operation by IAC of an alleged illegal two-number lottery game in derogation of Commonwealth statutory law and the CNMI Constitution.[1] Specifically, the government alleged that the game operated by IAC was illegal, known vicariously as "Pick-2", "2/38," "Daily Double," or

---

[1] The Office of the Mayor of Saipan awarded IAC a ten-year license to operate a bingo game, from 1988 through June of 1998. Appellee's Response Brief at 3.

Jueteng."[2] On October 23, 1996, the Superior Court issued a temporary restraining order enjoining IAC and its agents or representatives from engaging in any lottery other than the traditional game of bingo licensed by the Mayor of Saipan, and specifically enjoined the playing or conducting of IAC's "Island Amusement Bingo" game. On June 11, 1997, the government filed a motion for a preliminary and permanent injunction. The court denied the motion, finding that the definition of the game bingo as established in the rules and regulations of the Commonwealth Lottery Commission and municipal ordinance is broad, and IAC's game played under the mayor's license falls within that definition.[3] The government timely appealed.

## ANALYSIS

¶4 The dispositive issue in this appeal is whether the game played by IAC is permitted under the definition of bingo found in regulations and municipal ordinances.

¶5 Bingo is defined in Saipan Municipal Ordinance No. 4-1001-1997 which states:

> Bingo is a lottery game of chance played at a fixed location with cards containing certain numbers or symbols. These cards are distributed to players and prizes are awarded to a player or players on the basis of designated numbers or symbols, drawn at random, matching the numbers or symbols upon the card of the player. Cards having numbers or symbols similar to a bingo game card, but which numbers or symbols are concealed and reprinted in a manner to provide for the distribution of prizes on other than a completely random basis does not constitute the game of bingo; but rather constitutes an instant lottery ticket subject to licensing and regulation by the CNMI Lottery Commission.

At the hearing of June 11, 1997, the trial court judge ruled that IAC's bingo game met the requirements of bingo as defined by CNMI law:

> During argument, I asked attorneys to provide the court with the Mayor's definition and the Rules and Regulations for the operation of the Commonwealth Lottery, and I put those two definitions side by side and I have no question that the Mayor's definition was taken word by word from the Lottery Commission definition. The Court therefore finds that the definition is so broad that the game satisfied that definition. So the motion for permanent injunction is denied, and upon payment of that fine that the court imposed, matter is dismissed.[4]

The government concedes that the mayor's definition is identical to the definition of bingo found in the Department of Finance regulations.[5] However, the government now claims that the trial court's reading of the applicable definition of bingo as "broad" was erroneous and should be reversed, and that a proper, narrow reading of that definition leads inexorably to the conclusion that "Island Amusement Bingo" should be enjoined as an illegal lottery. In addition, the game operated by IAC does not meet the applicable definition because: (1) the game was not "played at a fixed location; (2) the game was not played with "bingo cards;" and, (3) no bingo cards were "distributed" to the players.[6]

¶6 ■ IAC, on the other hand, maintains that the trial court did not err in its decision that the bingo game operated by IAC falls within the definition of bingo as defined under the municipal ordinance of Saipan and the Commonwealth lottery rules and regulations. We agree.

### (1) The Game Was Played at a Fixed Location

¶7 IAC's bingo parlor is located at Chalan Piao, Saipan, where the game was played.[7] The bingo cards were distributed at this location, the numbers were drawn at this location, the numbers were called at this location, the winners were declared at this location, and the prizes were distributed at this location.[8] Therefore, the game was played at a fixed location.

### (2) The Game Was Played with "Bingo" Cards

---

[2] *Id.* at 2.

[3] *Commonwealth v. Island Amusement Corp.,* Civil Action No. 96-1095 (N.M.I. Super. Ct. June 12, 1997) (Order After Hearing at 1-2) ("Order"). The court also found that IAC violated the terms of the TRO for a period of 58 days, and sanctioned IAC $29,000.00 for its contempt. Order at 2.

[4] Transcript of Order, Excerpts of Record ("E.R.") at 174.

[5] *See Rules and Regulations for the Operation of the Commonwealth of the Northern Mariana Islands Lottery,* 15 Com. Reg. 10893 (1993).

[6] The government also seeks reasonable attorney's fees and costs for pursuing this appeal, pursuant to Com. R. App. P. 39.

[7] Appellees' Response Brief at 6; *Transcript of Testimony of Octavio Marasigan,* E.R. at 138-145, 151-152, 163-168, and *Declaration of Elliot A. Sattler,* E.R. at 6.

[8] *Id.* at 6-7.

¶8 According to IAC's Response Brief, and at oral arguments, IAC maintained that bingo cards were distributed, assigned, or made available upon request to players at IAC's parlor. The bingo cards contained 25 squares (5 x 5 squares) with random numbers and a "free" square at the center. Above the top five squares are the five letters B, I, N, G, O. A player then chooses two bingo cards which are consecutively numbered for identification from 38 bingo cards posted on the board of the parlor. The player then puts the numbers of the bingo cards selected on a slip. Each number corresponds to a bingo card posted on the board.[9] The record is replete with these examples, and therefore, the game was played with "bingo" cards.

### (3) Bingo Cards Were Distributed to Players

¶9 According to the declaration of Mr. Sattler presented at trial, cards were distributed to players.[10] The player is allotted two bingo cards that are chosen from the 38 cards on the wall after choosing or placing two numbers on the card. Upon request, the player then may take a card and await for the winning numbers for that nights drawing. The first bingo card to be marked with a straight, horizontal, vertical or diagonal line, wins the first game. The drawing of numbered balls continues until a second bingo card wins, whereupon the numbers of the two winning bingo cards are declared the winning combination for the night. The player (or players) to whom the two winning bingo cards have been allotted or distributed is the winner of the game.[11] Accordingly, cards were distributed or made available to players.

### (4) This Court is Not a Super Legislature

¶10 ■ Finally, IAC contends that this Court should refrain from the role of the legislature. If the government does not like the present definition of bingo under the Saipan Municipal Ordinance, it can seek to have it re-written, as opposed to seeking to have this Court judicially create a new definition. We agree. As stated by the trial court judge: "[t]he court cannot become a super legislature. I think a lot of these things could be resolved if we work together and try to resolve this problem in the legislative forum, rather than this courtroom."[12] As this Court previously stated in *King v. Board of Elections,* "we will not act as a super legislature and strike down a statute or a regulation merely because it could have been better written." 2 N.M.I. 398, 406 (1991) (internal citations omitted). Therefore, as we find that IAC's bingo game presently meets the mayor's definition of bingo, we are not in a position to re-write the present statute.

### (5) Request to Strike Extraneous Material Included in the Government's Reply Brief

¶11 ■ At oral argument, counsel for the appellees petitioned this Court to strike the extraneous material included in the government's reply brief as being improper evidence presented to the Court. In the reply brief, the government has included four exhibits: Exhibit (1) is a letter from Numbers International, Inc. to Lottery Administrator, Mr. Antonio R. Cabrera in response to a request for proposal (RFP 97-0131) to offer a lottery game under an operator's license, signed by Victorino M. Catienza as Vice-President; Exhibit (2) is a letter from Vice-President Catienza to Lottery Administrator Robert Florian in response to various concerns from the Department of Finance; Exhibit (3) is a letter written to Acting Attorney General Robert B. Dunlap, II from Eric S. Smith regarding the Mayor of Saipan bingo license; and Exhibit (4) is a copy of the Superior Court's published decision in *Island Amusement Corp. v. Marianas Chain Marketing Inc., et al.,* Civil Action No. 96-0549 (N.M.I. Super. Ct. July 1, 1996) (Decision and Order Granting Preliminary Injunction).

¶12 Com. R. App. P. 28(c), entitled *Reply Brief,* provides that "the appellant may file a brief *in reply to the brief of the appellee, . . . .*" (emphasis added). In the appellees' response brief, there are no references to the aforementioned exhibits included in the government's reply. We agree that they are extraneous and were improperly included in the government's reply brief. Accordingly, the appellees' request to strike this material is hereby **GRANTED**.

### CONCLUSION

¶13 Based upon the foregoing reasons, we hereby **AFFIRM** the judgment of the Superior Court.

---

[9] *Id.*

[10] *Id.; also see Sattler Declaration,* E.R. at 6.

[11] *Id.*

[12] Transcript of Order, E.R. at 174, 175.